## Roddy v. Sosnow, et al.

(Decided February 16, 1926.)

### Appeal from Logan Circuit Court

1. **Sales—Buyers Could Withdraw from Contract where Seller could Not Make Delivery.**—Where one entering contract to sell stock of goods could not make delivery, goods having been sold to another after expiration of his option, held buyers could withdraw from contract on ascertaining facts.

2. **Sales—Buyers could Not Withdraw from Contract Merely Because Seller would Not Accept Price Reduction.**—Where one entering contract to sell stock of goods could not make delivery, goods having been sold to another after expiration of his option, but, upon buyers' threat to sue, he arranged to purchase goods and fulfill contract, and buyers examined goods, declaring invoice satisfactory, held they could not then withdraw from contract merely because seller would not accept reduction in price.

3. Sales—Buyers Entitled to Verify Inventory Before Accepting Stock of Goods.—Where one entering contract to sell stock of goods could not make delivery, goods having been sold to another after expiration of his option, and, upon buyer's threat to sue, he arranged to purchase goods and fulfill contract, buyers were entitled to reasonable opportunity to verify inventory before, accepting goods.

4. Sales—Evidence Held Sufficient to Take Case to Jury in Seller's Action for Breach of Contract.—In action for breach of contract of sale of stock of merchandise, where plaintiff had entered contract to sell goods after his option thereon had expired, evidence held sufficient to take case to jury.

SELDEN Y. TRIMBLE and COLEMAN TAYLOR for appellant.

W. V. PERRY and HUBERT MEREDITH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Filmore Roddy brought this suit against the members of the firm of P. Blumenthal & Company to recover damages for the breach of a contract of sale of a stock of merchandise. At the conclusion of the evidence for plaintiff the trial court directed a verdict in favor of the defendants. Plaintiff appeals.

The facts shown by the evidence may be summarized as follows: Some time after the death of J. W. Bibb, of the firm of J. W. Bibb & Company, the firm's stock of merchandise was placed in the hands of Mr. A. G. Rhea for sale. Roddy, a traveling salesman, of Nashville, Tennessee, sought and obtained from Mr. Rhea a verbal option to purchase the merchandise, lease and fixtures at the price of $10,500.00. A few days later Mr. Rhea called him up and told him that if he wanted the stock of goods he would have to come the next day and take it. Roddy replied that he would come if he could. Roddy did not go, but two or three days later represented to S. Sosnow, a member of the firm of Blumenthal & Company, that he had purchased the stock of goods, and thereupon they entered into the following contract of sale:

"Nashville, Tenn.,
Jan. 10, 1923.

"Bought stock of merchandise from a Mr. Fillmore Roddy, who does hereby guarantee and certify the inventory taken in Russellville, Ky., of J. W. Bibb & Co. stock, consisting of the following line of merchandise mens and boys clothing furn-

nishing, shoes and hats, taken on about the 10th to the 15th of Dec. 1922.

"It is understood between Mr. Fillmore Roddy the first part and S. Sosnow the second part that there is to be deducted of said invoice the amount that has been sold since said invoice was taken.

"(signed)  FILMORE RODDY.

"Nashville, Tenn.,
Jan. 10, 1923.

"Mr. Filmore Roddy has sold to Mr. S. Sosnow, the entire stock of goods formerly owned by J. W. Bibb & Co., of Russellville, Ky., for a consideration of 37½% on the dollar of factory cost, and a further consideration of 12½% on the dollar for the transfer of the transaction. It is also further known that Mr. S. Sosnow has deposited with Abe Ulevitz of this city a check for $1,000.00 drawn on Schieff & Company Stake Bank Chicago, Ill., to guarantee to close deal according to inventory. Abe Ulevitz holds said check in *excroll*.

"(signed)  S. SOSNOW.

"Deal will be closed when balance is paid and stock taken possession of."

In compliance with the terms of the sale a check for $1,000.00 was delivered to Ulevitz. Two days later the parties, accompanied by Ulevitz, started for Russellville and arrived there that night. Roddy claims that he went to Mr. Rhea, who promised to carry out the transaction the next day. The next morning he learned that the goods had been sold to Wakefield & Wilson. When Sosnow was informed of this fact he became angry and threatened suit. Roddy then went to Wakefield & Wilson, who agreed to sell him the stock for the sum of $11,500.00 cash, the offer to expire that day. Roddy informed Sosnow that he had secured a new option. Thereupon the parties went to the store. Roddy says that Sosnow and Larner spent some time in the examination of the goods, and verified and acepted the inventory of $25,985.25 as the basis of settlement. When the inventory was finished Sosnow and his partners said that it was satisfactory. After that they wanted him to reduce the price from fifty cents to forty-four cents and a fraction. He declined to do that and they refused to carry out the trade. He then told them they would have to see him in court. After that

they went to Ulevitz and Ulevitz turned over the check to them without his knowledge or consent. Mr. Wilson of the firm of Wakefield & Wilson, testified that he made an arrangement with Mr. Roddy by which he could deliver the stock of goods to Sosnow and his partners. His firm were to receive $11,500.00 for it. They had bought and paid for the goods on the previous night, and, he thought, before the train from Nashville arrived. When the parties were over at the store he or Wakefield told Sosnow that they had sold the goods in bulk and did not want them torn up. Sosnow refused to take the goods until they were invoiced again. Whether that was the reason Sosnow would not trade with Roddy he did not know. After the trade fell through Roddy told them that he had done all he could to trade with the Jews, and hoped they would make a good trade with them. Roddy and Ulevitz then left for Nashville, and Wakefield & Wilson sold the goods to Sosnow and his partners.

The argument in favor of the peremptory may be summarized as follows: As the contract declared that the merchandise had been sold to the purchasers and nothing remained for the seller to do except to make delivery, the contract was executed and not executory. However, when the sale was made the seller had neither title nor possession, nor an enforceable contract by which he could transfer title and possession. Therefore, the purchasers were not bound as the risk of getting title and possession was too great to require them to incur. It doubtless is true that the purchasers could have withdrawn from the contract on ascertaining that the seller could not make delivery as the merchandise belonged to another, and if the transaction had ended there no liability would have been incurred. But, according to the seller's evidence, the purchasers did not declare the contract at an end. On the contrary, they threatened to sue the seller for damages. To avoid the consequences he arranged to purchase the goods from Wakefield & Wilson at a higher price than they had paid, and to make delivery. The purchasers were informed of the arrangement, went to the store, examined the goods, and, according to the seller's evidence, declared the invoice to be satisfactory. After that they attempted to make him accept a reduction in price which he declined to do. After the trade fell through they bought the goods from Wakefield & Wilson. On the other hand, Wilson, a member of the firm of Wakefield & Wilson, says that they notified the

purchasers they did not want the goods torn up, and the purchasers refused to take the goods until they were invoiced again. Whether that was the reason the purchasers would not make the trade he did not know. It can not be doubted that if the purchasers threatened to sue the seller for damages, and, to avoid the consequences, he arranged for the delivery of the goods and the purchasers either were afforded a reasonable opportunity to verify the inventory, or examined the goods and declared the invoice to be satisfactory, and then refused to take and pay for the goods because the seller would not accept a reduction in price, they are liable in damages. On the other hand, if the purchasers did not threaten to sue the seller for damages for nondelivery, or in good faith refused to take and pay for the goods because they were not afforded a reasonable opportunity to verify the inventory, they are not liable. As the evidence was conflicting, the questions were for the jury. It follows that the court erred in directing a verdict in favor of appellees.

Judgment reversed and cause remanded for a new trial consistent with this opinion.